UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JUANA P. COMBS,                                    Case No. 20-44989

                                                   Chapter 7
                    Debtor.
_____/                 Judge Thomas J. Tucker

K. JIN LIM, TRUSTEE,

        Plaintiff,
v.                                                 Adv. Pro. No. 20-4358

WAYNE K. COMBS

and

JANICE Y. COMBS,

        Defendants.
_____/

**OPINION REGARDING THE DEFENDANTS' MOTION TO DISMISS THIS
ADVERSARY PROCEEDING AND THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## I. Introduction

This case is about the Chapter 7 bankruptcy Trustee's "strong arm" avoidance powers,

under Bankruptcy Code § 544(a). In 2012, the bankruptcy Debtor executed and delivered a quit

claim deed, conveying certain real property to her parents, but that deed was never recorded.

Several years later, in 2020, the Debtor filed bankruptcy. Now the Trustee seeks to avoid the

2012 transfer, and recover the property, for the benefit of the bankruptcy estate and the Debtor's

creditors. As explained below, in this case, the Trustee prevails.

## II. Relevant facts and procedural history

Two motions are now before the Court: (1) the motion to dismiss filed by the *pro se* Defendants, Wayne K. Combs and Janice Y. Combs (the "Defendants") (Docket # 14, the "Motion to Dismiss"); and (2) the motion for partial summary judgment filed by the Chapter 7 Trustee (the "Trustee") (Docket # 29, the "Motion for Partial Summary Judgment").

The following facts are not disputed.

This adversary proceeding arises from the Chapter 7 bankruptcy case of Juana Combs (the "Debtor"). The Defendants are the parents of the Debtor. The Defendants reside in a single family home located at 19157 Binder, Detroit, Michigan (the "Property"). In a quit claim deed dated June 30, 2011 (the "2011 Deed"), the Property was conveyed from "Valerie R. Burris, a married woman" to "Juana P. Combs, a single woman."[1] Valerie Burris is the sister of Defendant Janice Combs.[2] The 2011 Deed was signed by "Valerie R. Burris" and a notation on the deed states that it was drafted by "Valerie Burris."[3] The 2011 Deed was recorded with the Wayne County, Michigan Register of Deeds, on June 30, 2011.[4]

Nine months later, on April 2, 2012, the Debtor executed a quit claim deed conveying her interest in the Property to the Defendants (the "2012 Deed"). The 2012 Deed was never recorded.[5]

---

[1] The 2011 quitclaim deed is attached as Exhibit B to the Trustee's "Response to Defendants' Motion to Dismiss Adversary Proceeding" (Docket # 26) at pdf p. 16.

[2] Br. in Supp. of Defs.' Mot. to Dismiss (Docket # 24) at pdf p. 2 ¶ 10.

[3] 2011 Deed (Docket # 26) at pdf p. 16.

[4] *Id.*

[5] A copy of the 2012 Deed has not been provided to this Court. However, the parties do not dispute that the 2012 Deed exists, do not dispute what it says, and do not dispute the fact that it was never recorded. Rather, as discussed later in this Opinion, the Defendants argue that execution and

2

The Debtor, acting without an attorney, filed her Chapter 7 bankruptcy case on April 13, 2020. On Schedule A/B of her bankruptcy schedules, the Debtor listed an interest in the Property.[6] The Debtor listed the Property and named the Defendants as owners of the Property, in response to question number 23 in Part 9 of the Statement of Financial Affairs, "Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone."[7]

The Trustee filed an adversary complaint (the "Complaint) alleging that, because the 2012 transfer of the Debtor's interest in the Property was not perfected as of the petition date, the Trustee can avoid the 2012 transfer. The Trustee relies on the "strong arm" avoidance powers under the Bankruptcy Code, 11 U.S.C. § 544(a). Specifically, the Trustee asserts the rights of a hypothetical judicial lien creditor under § 544(a)(1); a hypothetical unsatisfied execution creditor under § 544(a)(2); and a hypothetical bona fide purchaser under § 544(a)(3).[8] The Complaint

---

delivery of the 2012 Deed, without more, was sufficient to perfect their ownership interest in the Property.

[6] Docket # 15 in Case No. 20-44989 at pdf p. 1.

[7] Docket # 13 in Case No. 20-44989 at pdf p. 10.

[8] Compl. (Docket #1) at pdf pp. 2-4. Section 544(a) states:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> >
> > (2) a creditor that extends credit to the debtor at the time of the

3

further alleges that the Property is "recoverable from [the Defendants] pursuant to 11 U.S.C. § 550(a)(1) as both initial transferees and the entities for whose benefit the [2012] transfer of the property was made."[9]

The Defendants filed a motion to dismiss the Complaint.[10] The Trustee filed a motion for partial summary judgment, based on § 544(a)(3) (avoidance by hypothetical bona fide purchaser).[11] The Court held a hearing on the motions, and took them under advisement. The Court has considered all of the oral and written arguments of the parties, and all of the briefs and exhibits filed by the parties. For the reasons stated below, the Court must deny the Defendants'

---

> commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

[9] Compl. (Docket #1) at pdf p. 4 ¶ 16. Section 550(a)(1) states:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under **section 544**, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; . . .

11 U.S.C. § 550(a)(1) (emphasis added).

[10] Docket # 14.

[11] Docket # 29.

4

Motion to Dismiss and grant the Trustee's Motion for Partial Summary Judgment.

## III. Jurisdiction

This Court has subject matter jurisdiction over the Chapter 7 bankruptcy case and over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11. *See* 28 U.S.C. § 1334(b). Matters within either of these categories are deemed to be core proceedings. *Allard v. Coenen (In re Trans-Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *id.*, including the provisions of 11 U.S.C. §§ 544(a) and 550(a)(1) cited above. This proceeding is one "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## IV. Standards applicable to the motion to dismiss and the summary judgment motion

In *Wahrman v. Bajas (In re Bajas)*, 443 B.R. 768, 770-71 (Bankr. E.D. Mich. 2011), this Court discussed the standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). The Court incorporates by reference the standard stated in *Bajas*, and has applied that standard in deciding the Defendants' Motion to Dismiss.

In considering whether summary judgment should be granted, the Court has applied the standards governing motions for summary judgment under Fed. R. Civ. P. 56, which the Court now adopts from its prior opinion in the case of *Schubiner v. Zolman (In re Schubiner)*, 590 B.R. 362, 376-77 (Bankr. E.D. Mich. 2018):

This Court has previously described the standards governing a motion for summary judgment, as follows:

Fed.R.Civ.P. 56(a), applicable to bankruptcy adversary proceedings under Fed. R. Bankr. P. 7056, provides that a motion for summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *In Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149–50 (6th Cir.1995), the court elaborated:

> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the [trier of fact]. Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.

> If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact]. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. However, if the evidence is insufficient to reasonably support a . . . verdict in favor of the nonmoving party, the motion for summary judgment will be granted. Thus, the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmoving party].
> . . .

> Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson* [v. *Liberty Lobby, Inc.*, 477 U.S. 242, 106

6

> S.Ct. 2505, 91 L.Ed.2d 202 (1986)], *Celotex* [*Corp.
> v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d
> 265 (1986) ] and *Matsushita* [*Electric Indus. Co.,
> Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 106 S.Ct.
> 1348, 89 L.Ed.2d 538 (1986) ], trial courts have been
> afforded considerably more discretion in evaluating
> the weight of the nonmoving party's evidence. The
> nonmoving party must do more than simply show
> that there is some metaphysical doubt as to the
> material facts. If the record taken in its entirety could
> not convince a rational trier of fact to return a verdict
> in favor of the nonmoving party, the motion should
> be granted.

> *Id.* (internal quotation marks and citations omitted).  In determining
> whether the moving party has met its burden, a court must "believe
> the evidence of the nonmovant, and draw all justifiable inferences
> in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d
> 579, 586 (6th Cir.1999) (relying on *Russo v. City of Cincinnati*, 953
> F.2d 1036, 1041–42 (6th Cir.1992)).

> *McCallum v. Pixley* (*In re Pixley* ), 456 B.R. 770, 774–75 (Bankr.
> E.D. Mich. 2011).

## V.  Discussion

### A.  Avoidance of the 2012 transfer under § 544(a)(3)

The Trustee's Motion for Partial Summary Judgment seeks to avoid the 2012 transfer of

the Property from the Debtor to the Defendants under 11 U.S.C. § 544(a)(3).  Section 544(a)(3)

states that:

> (a) **The trustee shall have, as of the commencement of the case,
> and without regard to any knowledge of the trustee or of any
> creditor, the rights and powers of, or may avoid any transfer of
> property of the debtor** or any obligation incurred by the debtor
> **that is voidable by–**
> . . .

> (3) **a bona fide purchaser of real property**, other than fixtures,
> **from the debtor, against whom applicable law permits such**

7

**transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.**

(emphasis added). Section 544(a)(3) "assumes a transfer from the debtor to a bona fide purchaser on the date of filing. The trustee is then clothed with whatever legal rights the bona fide purchaser would possess." *In re First Mortg. Fund, Inc.*, 498 B.R. 180, 182 (E.D. Mich. 2013) (internal quotation marks and citation omitted).

"State law determines when a transfer is perfected against a bona fide purchaser." *Shapiro v. Mack* (*In re Fears*), 621 B.R. 205, 210 (Bankr. E.D. Mich. 2020). Because the Property is located in Michigan, Michigan law controls on this issue. Michigan law requires recording to perfect a transfer of real property, and under Michigan law, an unperfected transfer is void as against a bona fide purchaser:

> Michigan law requires recording to perfect a transfer of real property against a bona fide purchaser. <u>See</u> Mich. Comp. Laws Ann. § 565.29 (an unrecorded transfer of real property is "void as against any subsequent purchaser in good faith and for a valuable consideration"); <u>Hearn v. Bank of New York</u> (In re Hearn), 337 B.R. 603, 610 (Bankr. E.D. Mich. 2006) ("In Michigan, a mortgage that is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration . . . whose conveyance is recorded before such mortgage.").

*Id.; see also First Mortg. Fund, Inc.*, 498 B.R. at 182 (citing Mich. Comp. Laws § 565.29) ("In Michigan, a bona fide purchaser for value takes free of prior unrecorded interests.").

The Defendants argue that the 2012 Deed was properly notarized and delivered, and therefore, it is valid, even if it was not recorded. Delivery of the 2012 Deed may have been sufficient to transfer title, as between the Debtor and the Defendants. *See Ligon v. City of*

8

*Detroit*, 739 N.W.2d 900, 905 (Mich. Ct. App. 2007).  But the question is not whether the 2012 Deed was valid as between the Debtor and the Defendants.  Rather, the question is whether the Trustee, using the strong-arm powers of a bona fide purchaser, can avoid the transfer of the Property made by the 2012 Deed.  The answer is yes, because the 2012 Deed was not recorded.[12]  *See Fears*, 621 B.R. at 210; *First Mortg. Fund, Inc.*, 498 B.R. at 182.  Based on § 544(a)(3), the transfer of the Property under the 2012 Deed can be avoided by the Trustee.

## B.  The Defendants' argument regarding the 2011 deed

The Defendants also appear to argue, in effect, that the transfer of the Property through the 2012 Deed cannot be avoided by the Trustee under § 544(a)(3), because it was not a transfer of "property of the debtor," as required for avoidance under the statute.  In addition, the

---

[12]  The Defendants argue that "[I]n Michigan, only a mortgage needs to be perfected not a deed between family members and this deed was legally transferred to the [D]efendants' [sic] in April 2012." (Docket # 30 at pdf p. 5).  In support of this assertion the Defendants cite *Estate of Lintner v. Meier*, 73 N.W.2d 205 (Mich. 1955).  However, that case addressed only the issue of what constitutes "delivery" of a deed.  It did not address the question of when a transfer of real property is perfected as against a bona fide purchaser.

The Defendants also cite *Kohut v. Rigney* (*In re Rigney*), No. 09-cv-14593, 2011 WL 2693662 (E.D. Mich. July 12, 2011).  That case does not address the issue of whether an unrecorded deed is valid against the claims of a bona fide purchaser.

 In *Rigney*, the Trustee sought to avoid, as a preferential transfer, the recording of a quit claim deed some years after the deed was signed by the debtor's former wife.  The court noted that the issue before it was whether, for purposes of 11 U.S.C. § 547(b), the ex-spouse was a "creditor" of the debtor at the time the transfer occurred, *i.e.*, when the deed was recorded.  (Avoidance of a transfer under § 547(b) requires, among other things, that the transfer was "to or for the benefit of a creditor."  *See* 11 U.S.C. § 547(b)(1).)  The court stated that, under Michigan law, when the divorce judgment awarded the ex-spouse the property and when the debtor signed the quit claim deed, the debtor "effectively transferred all of his interest in the property to [the ex-spouse]."  *Id.* at *6.  The court also stated that "'[t]hough the failure to record the deed did create an unnecessary cloud on title, it did not change the character of the transaction' *between the parties.*"  *Id.*  at *6 (citation omitted) (emphasis added).  The court concluded that the ex-spouse did not have a claim against the debtor at the time the deed was later recorded, and therefore was not a creditor of the debtor at that later time.  Therefore, the recording of the quit claim deed was not a preferential transfer under § 547.  *Id.* at *7.

9

Defendants also appear to argue that even if the transfer that was done through the unrecorded 2012 Deed could be avoided, that still would leave the Defendants as the owners of the Property. Both of these arguments are based on the Defendants' assertion that their daughter, the Debtor, was only acting as their "agent" through "a power of attorney" when the Property was transferred from Valerie Burris to the Debtor by means of the 2011 Deed.[13]

The Defendants have not presented to this Court any documentary evidence of a power of attorney, or any evidence that the Debtor was merely acting as the Defendants' agent when the Debtor was named as the grantee on the 2011 Deed. The Defendants have not presented any evidence, through affidavits, sworn testimony, or otherwise, that they were intended by the grantor Valerie Burris to be the grantees under the 2011 Deed.

Moreover, certain admissions made by the Defendants during the hearing on the motions undercut Defendants' argument. Defendants[14] stated several times during the hearing that the power of attorney, by which they say the Debtor was authorized to act as Defendants' agent, "was not used" when Valerie Burris signed and delivered the 2011 Deed to the Debtor Juana Combs. This implies that although (according to the Defendants) the Debtor was authorized to accept the 2011 Deed on behalf of the Defendants, the Debtor in fact did not exercise the power to do that.

---

[13] The Defendants stated at oral argument that the Debtor was acting on their behalf at the time of the 2011 Deed transfer, because they could not accompany the grantor, Valerie Burris, to the office of the Wayne County Register of Deeds. The Defendants state, in their response to the Motion for Partial Summary Judgment, that "[t]he [D]ebtor was only acting on our behalf when signing the deed in June 2011." (Docket # 30 at pdf p. 4 ¶ 3). However, the 2011 Deed was not signed by the Debtor. (Docket # 26 at pdf p. 16). It was not required to be. And there was no place on the 2011 Deed for the signature of the Debtor, who was the grantee. In Michigan, a deed must be signed by the grantor, but there is no requirement that it be signed by the grantee. *See* Mich. Comp. Laws §§ 565.1, 565.152.

[14] During the December 9, 2020 hearing on the motions, only Defendant Janice Combs spoke for the Defendants. But at the end of the hearing, Defendant Wayne Combs expressly adopted all the statements and arguments that Janice Combs had made during the hearing.

And Defendants stated during the hearing that when they soon learned that the 2011 Deed had put the Property in the name of the Debtor, rather than in their names, it was "no big deal" to the Defendants, because the Debtor was their daughter. In addition, it is undisputed that the Debtor and the Defendants let more than nine months pass, after the 2011 Deed was delivered and recorded, before the Debtor executed the 2012 Deed, conveying the Property to the Defendants.

These admissions by the Defendants tend to show that in executing and delivering the 2011 Deed, the grantor, Valerie Burris, intended to transfer the Property to the Debtor alone, and not to the Defendants. There is no evidence in the record whatsoever that Valerie Burris had any other intent.

Moreover, the actual 2011 Deed itself most strongly undercuts the Defendants' argument. That deed, as executed and as recorded, lists only the Debtor as the grantee, and it contains no notation indicating that the Debtor was acting on behalf of, or as an agent of, the Defendants or anyone else. And it contains no indication of any power of attorney. There is no trace of evidence on the face of the 2011 Deed that supports the Defendants' argument.

Any later purchaser of the Property, in searching the records of the Wayne County, Michigan Registrar of Deeds, would have had no notice whatsoever, from the recorded 2011 Deed or from anything else of record, that anyone other than the Debtor owned the Property. *See Royce v. Duthler,* 531 N.W.2d 817, 821 (Mich. Ct. App. 1995) (notice of a possible defect in a vendor's title is "whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature by inquiry.") (citation omitted).

Defendants' argument, that they should be viewed as the actual (but undisclosed) grantees

under the 2011 Deed, instead of the one and only grantee actually listed on that deed (the Debtor), cannot prevail against a bona fide purchaser of the Property in the position of the Chapter 7 Trustee. That would be contrary to at least three Michigan statutes.

First, it would be contrary to the applicable Michigan statute of frauds. With exceptions not applicable here, the Michigan statute of frauds requires that a transfer of real estate must be done by a writing signed by the grantor. *See* Mich. Comp. Laws § 566.106. Here there is no writing signed by the grantor (Valerie Burris) transferring the Property to anyone other than the Debtor (Juana Combs).

Second, accepting Defendants' argument would violate the Michigan statute that protects bona fide purchasers against unrecorded prior transfers of real estate. *See* Mich. Comp. Laws § 565.29; *see also Fears,* 621 B.R. at 210; *First Mortg. Fund, Inc.,* 498 B.R. at 182. The only **recorded** transfer of the Property was the 2011 Deed. There is no **recorded** transfer of the Property **to the Defendants** that was ever done, during 2011 or later.

Third, accepting Defendants' argument would be inconsistent with the Michigan statutes applicable to quit claim deeds and to warranty deeds. The 2011 Deed is entitled "Quit Claim Deed," and Mich. Comp. Laws § 565.152 provides an acceptable form of wording for a quit claim deed, and then states that such a deed, "being duly signed, sealed, and acknowledged by the grantor, **shall be deemed to be a good and sufficient conveyance** in quit claim **to the grantee**, his heirs, and assigns." (emphasis added). The 2011 Deed also contains language like that found in the Michigan statutory form for warranty deeds, Mich. Comp. Laws § 565.151.[15] As with quit

---

[15] The 2011 Deed says that the Grantor, Valerie R. Burris, "Conveys and warrants to" Juana P. Combs the Property. The "conveys and warrants to" language is that prescribed for a warranty deed under § 151.51.

claim deeds, a warranty deed, when "dated and duly signed, sealed and acknowledged by the grantor, **shall be deemed and held to be a conveyance in fee simple to the grantee**, his heirs and assigns . . .." *See id.* (emphasis added). Thus, whether it is viewed as a quit claim deed or a warranty deed, the 2011 Deed must be deemed a conveyance of the Property to "the grantee" on that deed, *i.e.*, the Debtor Juana Combs, not a conveyance to anyone else.

## C. The Defendants' arguments in the nature of resulting trust and/or constructive trust

Lastly, the Defendants argue that the Debtor had only "bare legal title" to the Property, and that the Defendants have equitable title. The Defendants assert, without providing any actual evidence that the Court may consider under Civil Rule 56, that the Property has been in their family for several generations; the Defendants "have paid all liens prior to the initial transfer of deed and all associated liabilities in home ownership;" the Defendants have paid "all bills associated with the residence;" and "all major and minor repairs have been and will always be the responsibility of the [D]efendants."[16]

In support of their argument, the Defendants cite a Florida case, *Kapila v. Moodie* (*In re Moodie*), 362 B.R. 554 (Bankr. S.D. Fla. 2007).[17] In that case, the bankruptcy trustee sought to avoid a fraudulent transfer under 11 U.S.C. § 548. The debtor and her mother were listed as the grantees on a deed as joint tenants with rights of survivorship, even though the debtor did not have any involvement with the property; did not provide money for the purchase of the property; and did not know that the property was titled in her name until sometime after the property was purchased. *Id.* at 557-58. The debtor also stated that she was unaware of a mortgage taken on

---

[16] Br. in Supp. of Defs.' Mot. to Dismiss (Docket # 24) at pdf pp. 2-4.

[17] Defs.' Resp. (Docket # 30) at pdf p. 6.

the property even though her signature appeared on the mortgage. *Id.* at 558. The debtor's mother stated that the property was titled jointly to insure that the debtor would have rights upon the mother's death. About six months after the property was originally purchased, the debtor executed a warranty deed transferring the property to her mother. *Id.* There was no consideration paid. The debtor filed bankruptcy about four months later.

The bankruptcy court found that, for purposes of a claim under § 548(a)(1)(B), there was a transfer of an interest of the debtor in the property, because the debtor possessed bare legal title to the property. *Id.* at 559. The court noted that "[t]he law in Florida recognizes that a purchase money resulting trust is presumed '[w]here property is transferred to one person and the purchase price is paid by another.'" *Id.* at 559-60 (citations omitted). The court found that, based upon the facts before it, there was a "purchase money resulting trust" in favor of the debtor's mother. *Id.* at 560. As a result, before the debtor made the allegedly fraudulent transfer, the debtor held only a "bare legal title interest." *Id.* at 561. The court went on to conclude that, because bare legal title was "economically valueless" to the debtor, the transfer to her mother for no consideration did not constitute a transfer for less than reasonably equivalent value, and the claim under § 548 failed. *Id.* at 562.

This Court agrees with the Trustee that the holding in *Moodie* does not apply in this case, because Michigan law applies in this case, not Florida law, and purchase money resulting trusts are not recognized under Michigan law. *See Musial v. Yatzik*, 45 N.W.2d 329, 382 (Mich. 1951) (citing Mich. Comp. Laws § 555.7); *see also Hardy v. Heide*, 289 N.W. 246, 249 (Mich. 1939). Therefore, the Defendants cannot have any interest in the Property based upon a theory of purchase money resulting trust.

The Trustee argues that "Michigan law does not provide for a separate equitable interest in real property apart from the person to whom property was deeded."[18]  While purchase money resulting trusts are not recognized under Michigan law, Michigan courts do recognize that a constructive trust may be imposed as an equitable remedy.  *In re Swantek Estate*, 432 N.W.2d 307, 311 (Mich. Ct. App. 1988); *In re Filibeck Estate,* 853 N.W.2d 448, 449 (Mich. Ct. App. 2014).  The imposition of a constructive trust "makes the holder of the legal title the trustee for the benefit of another who in good conscience is entitled to the beneficial interest."  *Arndt v. Vos*, 268 N.W.2d 693, 695 (Mich. Ct. App. 1978).

Michigan courts sometimes have imposed constructive trusts in favor of one party where real property is titled in the name of another party, in order to prevent unjust enrichment.  *See Kent v. Klein*, 91 N.W.2d 11 (Mich. 1958); *Male v. Russell*, No. 324000, 2016 WL 233145 (Mich. Ct. App. January 19, 2016).  Michigan courts also have imposed constructive trusts where an agent, charged with acquiring property for her principal, acquires the property for herself.  *See Stephenson v. Golden,* 276 N.W. 849, 861 (Mich. 1937) ("Where a person acquires the legal estate in property as the agent of another, or upon trust and confidence that he will acquire it for the benefit of another, equity will imply a trust in favor of the latter.") (internal quotation marks and citation omitted); *Digby v. Thorson*, 30 N.W.2d 266, 272-73 (Mich. 1948) ("A person who agrees with another to purchase property on behalf of the other and purchases the property for himself individually holds it upon a constructive trust for the other, even though he is not under a duty to purchase the property for the other.") (internal quotation marks and citation omitted).

In this case, the Defendants have argued that they have "equitable title" to the Property

---

[18]  Pl.'s Reply (Docket # 34) at pdf p. 3.

because the Property has been in the family for several generations, and for several years they, not the Debtor, have paid the expenses associated with the Property, including paying off liens and paying for repairs to the Property.  Additionally, as was noted above, the Defendants have alleged that the Debtor was acting as their agent at the time of the 2011 Deed, and that the intent at that time was that the Property be conveyed to them, not the Debtor.

Outside of bankruptcy, these unsworn assertions, if proven, *might* support the imposition of a constructive trust under Michigan law, at least as against a party *other than* a bona fide purchaser.  However, for the following reasons, the Defendants cannot prevail over the Trustee's § 544(a)(3) claim.

First, the Defendants have not presented any documentary evidence or affidavits regarding their contributions to the Property or, as was noted previously, regarding the existence of an agency relationship with the Debtor in connection with the transfer of the Property at the time of the 2011 Deed.  The Defendants have not met their summary judgment burden of producing any evidence to demonstrate that a genuine issue of material fact exists on the question of equitable circumstances giving rise to a constructive trust.[19]  *See Schubiner*, 590 B.R. at 376. Although the Defendants are representing themselves in this adversary proceeding, they are still required to comply with the Federal Rules of Civil Procedure, including Rule 56 governing summary judgment motions.  A party's "status as a pro se litigant does not alter his duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.,* 375 F. App'x 482, 485 (6th Cir. 2010) (citing *United States v. Ninety Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003)).

---

[19]  The party seeking the imposition of a constructive trust bears the burden of proof.  *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools*, 504 N.W.2d 635, 642 (Mich. 1993).

Second, under Michigan law, constructive trusts can only be imposed where there are "no intervening rights of bona fide purchasers." *See Potter v. Lindsay*, 60 N.W2d 133, 136 (Mich. 1953); *Nichols v. Martin*, 269 N.W. 183, 185 (Mich. 1936). In *First Mortg. Fund, Inc.,* 498 B.R. 180, 182, 185 (E.D. Mich. 2013), the court held that a bankruptcy trustee, asserting the rights of a bona fide purchaser under Bankruptcy Code § 544(a)(3), takes free of prior unrecorded interests and free of equitable claims, including a claim for the imposition of a constructive trust. *See First Mortg. Fund, Inc.*, 498 B.R. at 182, 185.

Third, in any event, this bankruptcy court cannot impose a constructive trust in this situation. As this Court recently discussed at length in another case, decisions of the United States Court of Appeals for the Sixth Circuit prohibit bankruptcy courts from imposing a constructive trust when that would have the effect of taking away assets that otherwise would be property of the bankruptcy estate. *See Miller v. Short* (*In re Short*), __ B.R. __, No. 19-4448, 2021 WL 630346 (Bankr. E.D. Mich. Feb. 16, 2021) at * 7-13 (discussing *XL/Datacomp, Inc. v. Wilson* (*In re Omegas Group, Inc.*), 16 F.3d 1443, 1451-53 (6th Cir. 1994); *Kitchen v. Boyd* (*In re Newpower*), 233 F.3d 922, 935-37 (6th Cir. 2000); *Poss v. Morris* (*In re Morris*), 260 F.3d 654, 666 (6th Cir. 2001)).

In *Miller v. Short*, this Court quoted extensively from the Sixth Circuit's decision in the *Omegas Group* case, including the following passage that also applies in this case:

> ***The equities of bankruptcy are not the equities of the common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor.*** "Ratable distribution among all creditors" justifies the Code's placement of the trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain

competing interests (and even to nullify the debtor's "preferential" prepetition payments to otherwise entitled creditors) *so as to maximize the value of the estate*. To a party defrauded by the debtor, incorporating the proceeds of fraud in the debtor's estate may seem like allowing the "estate to benefit from property that the debtor did not own." [*Vineyard v. McKenzie* (*In re Quality Holstein Leasing*), 752 F.2d 1009, 1013 (5th Cir. 1985)]. But as the Seventh Circuit has pointed out, "allowing the estate to 'benefit from property that the debtor did not own' is exactly what the [Bankruptcy Code] strong-arm powers are about: *they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title."* *Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir.1989) (criticizing *Quality Holstein Leasing* ). *The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement.*

*Miller v. Short*, 2021 WL 630346 at * 8 (quoting *Omegas Group*, 16 F.3d at 1452-53) (emphasis added.).

There are certain exceptions to the rule that prohibits bankruptcy courts from imposing a constructive trust, but none of them apply here. For example, in *Miller v. Short*, this Court held that a constructive trust may be imposed in favor of a Chapter 7 trustee, in the situation where the constructive trust would bring assets *into* the bankruptcy estate, rather than take assets away from the estate. The present case does not fall within that category.

And this Court may enforce a constructive trust that was imposed *by a state court*, where certain requirements are met. *See In re Blume*, 582 B.R. 178, 180 (Bankr. E.D. Mich. 2017). But such requirements are not met here. And no state court has imposed a constructive trust. Nor was any state court action seeking such relief commenced before the Debtor Juana Combs filed her bankruptcy case.

18

For these reasons, the Court must reject the Defendants' resulting trust and constructive trust arguments.

## VI. Conclusion

This Court is not unsympathetic to the Defendants' situation. But failing to record a deed can have serious adverse consequences. In this case, applicable Michigan law and the provisions of the Bankruptcy Code, as discussed above, combine to compel the Court to rule in favor of the Chapter 7 Trustee. The Court holds, as it must, that under 11 U.S.C. § 544(a)(3), the Trustee can avoid the transfer of the Property to the Defendants that was done through the 2012 Deed, for the benefit of the bankruptcy estate, and that under 11 U.S.C. § 550(a)(1), the Property is recoverable by the Trustee. And the Court must hold that the result of this is that the Property will be considered property of the bankruptcy estate in the Debtor Juana Combs's bankruptcy case.

The Court will enter an order denying Defendants' Motion to Dismiss, and granting the Trustee's Motion for Partial Summary Judgment.[20]

**Signed on March 9, 2021**



/s/ **Thomas J. Tucker**

**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[20] Because § 544(a)(3) permits the Trustee to avoid the transfer, it is not necessary for the Court to consider the Trustee's alternative avoidance claims, under §§ 544(a)(1) and 544(a)(2).

19